
FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.

2011 MAY 23 PM 3: 40

R Aik
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

NEALLY CUNNINGHAM,

    Plaintiff,

vs.

JOHNATHAN MEAD; KENDELL
SHAW; and PATRICK MOORE,

    Defendants.

CIVIL ACTION NO.: CV209-197

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Neally Cunningham ("Plaintiff"), an inmate currently incarcerated at the Federal Correctional Institution in Jesup, Georgia, filed a Complaint pursuant to 28 U.S.C. § 1331 and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), contesting certain conditions of his confinement. Defendants filed a Motion to Dismiss. Plaintiff filed a Response. For the reasons which follow, Defendants' Motion should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff asserts that he complained to Defendants Kendall Shaw and Patrick Moore for two (2) months about concerns for his health, as his cellmate did not follow the medical unit's instruction that inmates shower daily. Plaintiff contends that Defendants Shaw and Moore did not resolve his complaints, so he told the Associate

Warden about his complaints. Plaintiff also contends that Defendant Moore told him that he would be placed in a disciplinary cell for 90 days for going to the Associate Warden with his complaints. Plaintiff alleges that he filed an administrative remedy request about being placed in the disciplinary cell. Plaintiff also alleges that he was not moved back to a non-disciplinary cell, even though several cells became available. Plaintiff further alleges that he complained to the Associate Warden about not being moved, and Defendant Shaw told him that, because he spoke with the Associate Warden, he would remain in the disciplinary cell. Plaintiff contends that Defendants Johnathan Meade, Shaw, and Moore entered false information into the Bureau of Prison's ("BOP") computer system in an attempt to have Plaintiff transferred and to prevent Plaintiff from continuing with the grievance process. Plaintiff contends that the actions of Defendants Meade, Moore, and Shaw were retaliatory in nature, as Plaintiff accessed the grievance procedures and approached the Associate Warden about his complaints. Plaintiff asserts that he filed an Administrative Tort Claim with the BOP about these alleged events, and Defendant Shaw interfered with this process by investigating his claim, even though Defendant Shaw was a part of Plaintiff's claim, and by preventing Plaintiff from addressing the allegations of his tort claim. Plaintiff avers that Defendant Shaw's actions were made due to retaliation.

Defendants assert that Plaintiff's Complaint should be dismissed, as he failed to exhaust his available administrative remedies prior to filing his Complaint.

## STANDARD OF REVIEW

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and

2

should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. (internal punctuation and citation omitted). A judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. Once findings are made on disputed issues of fact, the court must decide, based on those findings, whether the inmate has exhausted available administrative remedies. Id.

## DISCUSSION AND CITATION TO AUTHORITY

Defendants contend that Plaintiff did not complete the full administrative process before he filed his Complaint. Defendants assert that Plaintiff filed Administrative Remedy Request Number 565641-F1 on December 1, 2009, in which he claimed staff retaliated against him by writing an incident report against Plaintiff for wearing an unauthorized t-shirt. Defendants allege that the Warden denied Plaintiff's Administrate Remedy Request, and Plaintiff did not file an appeal with the Regional Director, thus ending his administrative remedies process. Defendants assert that Plaintiff did not file any Administrative Remedy Requests regarding the allegations he makes in his Complaint.

Plaintiff avers that he filed three (3) Administrative Remedy Requests on January 12, 2009, in which he alleged Defendant Moore violated Bureau of Prisons' policy. Plaintiff states that Defendant Shaw informally resolved these Requests on February 3, 2009, but the violations he set forth in those Requests continued. Plaintiff contends that he spoke to the Warden about these continuing violations, and Defendant Shaw told

3

Plaintiff that he would continue to suffer from those violations since he went to the Warden. Plaintiff asserts that Defendant Shaw's "threat" made the administrative remedies unavailable to him. Plaintiff also states that Defendant Mead later informed him that he was going to be transferred because of his complaints to the Warden about the "unit team". (Doc. No. 35, p. 3). Plaintiff contends that he "immediately sought to access the inmate grievance process by informally resolving the 'retaliatory acts' of the defendant with" the Warden. (Id.). Several days later, Plaintiff also contends, Defendant Shaw threatened him after he filed this informal resolution if Plaintiff did not stop filing complaints against the unit team. Plaintiff asserts that he attempted to informally resolve issues regarding a transfer, and Defendants "came together with the sole purpose to deceive the Warden by intentionally providing her with false custody classification data[.]" (Id.). Plaintiff asserts that Defendants' actions rendered the administrative remedy process unavailable to him.

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). 42 U.S.C. § 1997e(a) states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523. The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can

function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007). It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

While "available administrative remedies" does not mean that the remedies must be adequate, it does mean that the exhaustion process actually must be available to the inmate. Alexander v. Hawk, 159 F.3d 1321, 1326 (11th Cir. 1998). Indeed, in determining whether a plaintiff has exhausted his administrative remedies, a court does "not review the effectiveness of those remedies, but rather whether remedies were *available* and exhausted." Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999) (emphasis added). "[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). "First, the court looks to the factual allegations in the defendant[s'] motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If in that light, the defendants [are] entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." Id. "If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. The defendant[s] bear the burden of proving the plaintiff has failed to exhaust his available

5

administrative remedies." Id. "[A] prison official's serious threats of substantial retaliation against an inmate for lodging in good faith a grievance make the administrative remedy 'unavailable,' [and] the exhaustion requirement as to lodging a grievance or pursuing a particular part of the process is lifted." Halpin v. Crist, 405 F. App'x 403, 407 (11th Cir. 2010) (internal citation omitted). Both of these conditions must be met to render the administrative remedy process unavailable: "(1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." Id.

Inmates being housed in a Bureau of Prisons' facility must exhaust administrative remedies prior to filing a cause of action in federal court. "The Bureau of Prisons has established regulations that set forth the procedures that a prisoner must follow before seeking relief from a district court." Gonzalez v. United States, 959 F.2d 211, 212 (11th Cir. 1992). According to these regulations, an inmate is required to seek an informal resolution of an issue. 28 C.FR. § 542.13(a). If an informal resolution cannot be had, the inmate can file a grievance with the Warden ("BP-9"), and the Warden has 20 days to respond. 28 C.F.R. § 542.14(a). "The inmate shall place a single complaint or a reasonable number of closely related issues on the form." 28 C.F.R. § 542.14(c)(2). If the inmate is not satisfied with the Warden's response, he may file an appeal with the Regional Director ("BP-10"). 28 C.F.R. § 542.15(a). Finally, if the inmate is not satisfied with the Regional Director's response, he can file an appeal with the General Counsel for the Federal Bureau of Prisons ("BP-11"). Id.

AO 72A
Rev. 8/82)

In his Complaint, Plaintiff states that the events set forth in his Complaint occurred on January 12, February 3, and March 10, 2009. (Doc. No. 1, p. 3). The evidence before the Court reveals that Plaintiff filed an Administrative Remedy Request on January 12, 2009, in which he stated that he had complained to Defendant Moore for two (2) months about his cellmate not following hygiene protocol. A handwritten notation dated February 3, 2009, stated that the issue would be resolved informally. (Doc. No. 35, p. 9). Plaintiff filed an "Inmate Request to Staff"[1] on March 19, 2009, and he stated Defendant Mead told him that he was going to be transferred. According to Plaintiff, his name was submitted for a transfer as retaliation for exercising his First Amendment rights. (Id. at pp. 10-11). There is nothing indicating Plaintiff filed any other documents regarding his claim that Defendants retaliated against him.

There is no evidence that, even if Defendants threatened Plaintiff, their threats would have deterred a reasonable inmate from filing a grievance or completing the grievance process. In fact, Plaintiff filed a tort claim against Defendant Mead on June 8, 2009, which was not long after the incidents complained of in this cause of action are alleged to have occurred. (Doc. No. 35, pp. 12-13). Additionally, Plaintiff filed Administrative Remedy Request Number 565641-F1 on November 4, 2009, in which he alleged that Defendant Mead had retaliated against him based on Plaintiff's filing of a tort claim by singling out Plaintiff for the shirt he was wearing on October 31, 2009, and issuing an incident report against him. (Doc. No. 29-1, p. 17). Plaintiff's later actions undermine his assertion that Defendants threatened him and these threats made the administrative remedy process "unavailable" to him.

---

[1] It is unclear whether this form represents any step in the administrative remedy process.

7

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion to Dismiss be **GRANTED**. It is also my **RECOMMENDATION** that Plaintiff's Complaint be **DISMISSED**, without prejudice, due to his failure to exhaust his available administrative remedies.

**SO REPORTED** and **RECOMMENDED**, this 23rd day of May, 2011.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE